## FAIN SPIVEY V. THE STATE.

No. 18926.   Delivered May 12, 1937.

The opinion states the case.

*Marsene Johnson, Jr.*, of Galveston, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for two years.

The State's witness, T. C. Williams, testified that he and the deceased, Roy McKissick, worked at Dickinson, Texas, for the Humble Oil & Refining Company; that it was their duty to work until twelve o'clock midnight. On the night of August 10, 1935, as they were traveling towards Houston in a 1931 model Chevrolet coupe, they were run into at Golden Pheasant by a Pontiac car in which the appellant and several other negroes were riding. Williams started to turn his car and was some ten or twelve feet off the pavement when his car was struck by that of the appellant. According to Williams, the car driven by the appellant was traveling between seventy and eighty miles an hour. When the cars collided, Williams was thrown out of his car and into a culvert across the road, a distance of between 50 and 75 feet. He suffered only minor injuries, but the deceased McKissick was seriously injured. The deceased was first laid upon a car cushion but later placed upon the porch of a place called "The Tavern." In about forty-five minutes he was taken in an ambulance to a hospital in Galveston where he died about two o'clock on the following day.

William C. Drouilhet testified that he was at "The Tavern" on the night when the automobile wreck occurred; that he assisted the negro occupants out of their car. He saw a man lying on the ground, whom he assisted in carrying to the porch of "The Tavern," put some ice water on his head, covered him up until the ambulance arrived and then accompanied the injured man to the hospital. The witness Drouilhet further testified that when they lifted up the overturned car, the appellant got out of the driver's seat. Drouilhet testified that he was about a foot away from the appellant and detected the odor of liquor upon his breath. From the testimony of Drouilhet we quote:

"From what I saw of the defendant, the way he conducted himself, and the odor of liquor I smelled on his breath, everything together, I would say he was under the influence of liquor at that time."

Henry Ottwork testified that he went to the scene of the collision and assisted in the rescue work. He saw appellant behind the steering wheel of the car. He later saw him when appellant asked for some chipped ice. He was very close to the appellant when he talked to him. From the testimony of Ottwork we quote:

"I know the odor of liquor when I smell it, and I smelled liquor on his breath when he asked me for the chipped ice. It was on the defendant's breath. * * * I have seen people under the influence of liquor. * * * I would say that the defendant was drunk when I saw him."

Cush Farina testified that he had just gotten off from work and was walking across the street when he heard a big noise. He looked back and saw a car in the ditch. He assisted in lifting up a car which had overturned. When the car was lifted up, the appellant got out from under the steering wheel. This witness said he smelled the odor of liquor but would not swear that it came from the appellant.

J. N. Gillespie testified that he saw the wreck and helped turn the automobile up; that the appellant was sitting under the steering wheel at the time. There were seven negroes in the car. Gillespie testified:

"I got close to the defendant. I know the odor of liquor when I smell it. I detected the odor of liquor on his breath. * * * I saw enough of the way he acted at the time to determine that he was under the influence of liquor."

Emil Schenek, a Justice of the Peace, testified that he went to the scene of the wreck and made an examination of the

Pontiac car which was in the ditch. In the car he found a pint bottle about half full of liquor, two empty flasks, and a lady's purse with a few articles and about $2.00 in change.

Mary Jane Franklin testified that she was in the car with the appellant at the time of the collision and that he was driving the car.

Dr. William Borganier, an interne at the John Sealy Hospital in Galveston, testified that he treated the wounds of the appellant on the night of August 10, 1935. The appellant had low blood pressure from the loss of blood; that he had been bleeding a lot when he came in. The doctor testified:

"While I was sewing up the defendant's arm I did not detect the odor of liquor on his breath. While I was working on him he did not at any time, by his acts or conduct, indicate that he was under the influence of liquor in any respect."

The doctor also stated that if the odor had been strong he would probably have detected it.

The appellant testified that on the night of August 9th, between ten and eleven o'clock, he and seven other negroes left Houston for the purpose of going to a beach party at Galveston. When they started out, Carl Jones was driving the car, but since he had been drinking and was somewhat "tight" the appellant took over the steering wheel. They were riding in a four-door, 1935 model, Pontiac sedan. They stopped outside of Houston to get gas and oil and one of the men got out of the car. They later stopped at a cafe about a mile from the city limits of Dickinson. They then proceeded along the highway at a speed of between forty and 45 miles an hour. As they reached Golden Pheasant, they met a stream of cars. According to the appellant:

"And all at once one car, his lights went out of my face and went to my left, and he was trying to turn, and I grabbed my steering wheel, and to avoid the accident I pulled over and by me pulling over I hit him near the center of his car, and from the impact the steering wheel hit me in the chest and I was out, unconscious, and I imagine I was sitting there or lying there in the car unconscious."

After getting out of the car the appellant walked across the street to The Tavern and asked for a pitcher of ice water. He then returned to the wrecked car. He was picked up in a private car and taken to a hospital in Galveston. Appellant denied that he had had anything to drink from the time he left Houston until the time of the accident. Two of the occupants of the car had drunk some "highballs" before they left

Houston. He did not know whether they had taken any whisky with them in the car or not.

On the question of the intoxication of the appellant the evidence is conflicting. The State's witnesses testified that the acts and conduct of the appellant, together with the odor of liquor upon his breath, were such as to justify them in stating that he was drunk. The appellant testified that he had not been drinking. One of his witnesses testified that he smelled whisky in the car but he did not know whether it was upon the breath of any one. The doctor who treated the wounds of the appellant testified that he did not smell the odor' of liquor on the breath of the appellant, although it was possible that he could have such odor.

Bills of Exception Nos. 1 and 2 complain of the action of the court in refusing to instruct a verdict of not guilty. No error is presented by the bills.

In Bill of Exception No. 3 the appellant challenges the sufficiency of the evidence to sustain the conviction. In our opinion, the evidence is sufficient to support the verdict of the jury.

No error justifying a reversal of the conviction having been perceived, the judgment of the trial court is affirmed.

*Affirmed.*